**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| ALLEN J. GORDON,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER E. EHLERS, *et al.*,<br><br>Defendants. | Case No. 23 C 6130<br><br>Hon. LaShonda A. Hunt |

## MEMORANDUM OPINION AND ORDER

Self-represented Plaintiff Allen J. Gordon brings this civil rights action under 42 U.S.C. § 1983, alleging that he was illegally detained, arrested, and held without probable cause in connection with his October 2018 arrest by Defendant Illinois State Police Sergeant Christopher Ehlers. Plaintiff also sues Ehlers' supervisor, Sergeant Chad Martinez, for failing to adequately review the basis for his arrest. Finally, Plaintiff asserts a state law claim for malicious prosecution against both Defendants. Currently before the Court is Defendants' motion for summary judgment, (Dkt. 82). For the reasons stated below, Defendants' motion is granted.

## BACKGROUND

### I. Local Rule 56.1

Local Rule 56.1 governs how to present and dispute facts in connection with motions for summary judgment filed in this District. *See* L.R. 56.1 (N.D. Ill.). Under Local Rule 56.1(a)(2), the moving party first provides a statement of material facts, each of which "must be supported by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation." L.R. 56.1(d)(2). The opposing party then responds to the movant's statements of fact. *Schrott v. Bristol-*

*Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); L.R. 56.1(e). If there is any disagreement, the opposing party "must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." L.R. 56.1(e)(3). The opposing party may also submit "a statement of additional material facts," to which the moving party responds in the same manner. L.R. 56.1(b)-(c). A party's *pro se* status does not excuse him from complying with Local Rule 56.1. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006).

Although the Court can demand strict compliance with Local Rule 56.1, *see Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x 642, 643 (7th Cir. 2011), it will generously construe the facts identified by Plaintiff to the extent they are supported by the record, or where he could properly testify to them. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (courts may construe *pro se* submissions leniently). But the Court will not look beyond the cited material. *See Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003) ("[D]istrict courts . . . are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them."). Any failure by Plaintiff to strictly comply with Local Rule 56.1 is not a basis for automatically granting the Defendants' motion. *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021). The Court is mindful that the moving party, Defendants here, have the "ultimate burden of persuasion" to show they are entitled to judgment as a matter of law. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006).

Defendants filed their motion for summary judgment, a memorandum of law, a Local Rule 56.1(a) statement of material facts, and supporting exhibits. (Dkts. 82-84). As required under Local

Rule 56.2 requires, Defendants also provided Plaintiff with a formal Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment. (Dkt. 89).

Plaintiff's responsive filings, however, do not entirely comply with Local Rule 56.1. When opposing a 56.1 statement, the opposing party "must cite specific evidentiary material that controverts the fact[.]" N.D. Ill. L.R. 56.1(e)(3). "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003). Indeed, facts "may be deemed admitted if not controverted with specific citations to evidentiary material." N.D. Ill. L.R. 56.1(e)(3). Here, in Plaintiff's response to Defendants' Local Rule 56.1 Statement, (*see* Pl.'s Statement of Additional Material Facts ("Pl.'s Resp. Defs.' SOF"), Dkt. 100, pgs. 687-92),[1] where he admits to some of Defendants' statements (*see, e.g.*, *id*. at ¶¶ 1-6, 8, 11, 14-21, 23-24, 26-29, 32, 34 (admitting facts)) and disputes others, he cites material that does not properly dispute the statement, (*see, e.g.*, *id.* at ¶¶ 7, 9, 10, 13, 22). Where Plaintiff responds with unsupported arguments or legal conclusion, the Court need not consider them. *See Almy v. Kickert Sch. Bus Line, Inc*., No. 8 C 2902, 2013 WL 80367, at *2 (N.D. Ill. Jan. 7, 2013) ("[C]ourts are not required to 'wade through improper denials and legal arguments in search of a genuinely disputed fact.'") (quoting *Bordelon v. Chi. Sch. Reform Bd. of Trs*., 233 F.3d 524, 529 (7th Cir. 2000)).

In addition, the Court can disregard factual assertions that conflict with prior sworn testimony, legal arguments, and conclusions set forth as "facts," speculative declarations about

[1] While Plaintiff's filing at ECF No. 100 was titled as a "Statement of Additional Facts," it was actually his response to Defendants' LR 56.1 Statement. (*See generally* Pl.'s Resp. Defs.' SOF). In contrast, Plaintiff's actual Statement of Additional Facts is included in ECF No. 98, within a filing titled "Plaintiff's Response In 'Opposition' to Memorandum of Law:" (*See generally* Dkt. 98 ("Pl.'s SOF")). Last, Plaintiff's Response to Defendants' actual motion is at ECF No. 99, but is titled "Plaintiff's Response to Defendants' Local Rule 56.1 Statement." ("Pl.'s Resp. Defs.' Mem.") To avoid confusion, the Court's shortened citation references refer to the substance of the document, not the title. Furthermore, unless otherwise noted, page numbers in docket citations refer to the "PageID #" in the CM/ECF header of the document.

other people's mindsets, hearsay statements, and statements about matters that only an expert could properly testify to. *See Jones v. DeJoy*, No. 18 C 1213, 2020 WL 6716218, at *1-2 (N.D. Ill. Nov. 16, 2020) (striking offending portions of Rule 56.1 statements that were "riddled with argument, unsupported assertions, and in some cases factual allegations beyond those set forth in the paragraph to which [plaintiff] was responding"); *Campbell v. City of Chicago*, No. 16 C 6000, 2018 WL 4637377, at *1 (N.D. Ill. Sep. 27, 2018) ("Purely argumentative denials, legal conclusions, and unsupported general denials do not belong in Local Rule 56.1 statements."). In short, where Plaintiff's responses are argumentative, fail to controvert Defendants' statements with specific citations to evidentiary material, or quibble with the record in a manner that renders the dispute immaterial, those responses are properly ignored.[2]

In addition to his responses, Plaintiff also submitted a statement of additional facts asserting facts that repeat several of the facts in Defendants' L.R. 56.1 statement, are argumentative, or are otherwise immaterial to the operative claims. (*See generally* Pl.'s SOF). In short, based on the governing law and the Local Rule, the Court deems Defendants' factual assertions admitted where they are not properly disputed and ignores Plaintiff's additional factual assertions where they are immaterial or not properly supported by citations to the record.

---

[2] For instance, Defendants' Statement of Fact No. 7 described the color of the leather jacket central to Ehlers's probable cause determination at the time of the arrest, and stated that Plaintiff "placed his hands in the pockets of the jacket" while inside the gas station. (Defs.' L.R. 56.1 Statement of Facts ("Defs.' SOF"), Dkt. 83 at 303 (citing Defs.' SOF, Ex. G-4 at 11:24-14:49, Dkt. 83-14 (video showing Plaintiff wearing the jacket in question)). Plaintiff admits to having worn a black-and-white jacket into the gas station but disputes placing his hands in the pockets of the jacket based on the lack of such information in Ehlers's initial report. ((*See* Pl.'s Resp. Defs.' SOF at 687). First, the absence of evidence is not evidence of absence. Ehlers's report not including a note about the placement of Plaintiff's hands is not "specific evidentiary material that controverts the fact" in Defendants' statement. N.D. Ill. L.R. 56.1(e)(3). In any event, whether or not the video Defendants cited in support of this fact showed Plaintiff putting his hands in his pocket in the gas station is immaterial. It had no bearing on Ehlers's probable cause determination at the scene (which was based on the jacket's placement in the car) or probable cause to maintain Plaintiff's detention (which hinged on Plaintiff wearing the jacket, suggesting he owned it).

## II. **Factual Background**

With these principles in mind, the Court recounts the relevant facts taken from the parties' Local Rule 56.1 statement, which are undisputed unless otherwise noted. Plaintiff was arrested in Markham, Illinois on October 20, 2018, by Sgt. Ehlers. (Defs.' SOF ¶ 1). At the time of the arrest, Sgts. Ehlers and Martinez were both employed by the Illinois State Police ("ISP"). (*Id*. ¶¶ 2, 26).

In the late evening of October 19, 2018, or early morning of October 20, 2018, Plaintiff and Zakir Bey traveled to a JP Petroleum Mobile gas station in Markham, Illinois in Bey's vehicle, a Dodge Charger. (*Id*. ¶ 5). At the gas station, a group of more than ten people gathered. (*Id*. ¶ 6). Plaintiff knew two of them: Bey and Zead Graham. (*Id*.). After arriving at the gas station, Plaintiff and Graham entered the gas station to make a purchase. (*Id*. at ¶ 7). At the time, Plaintiff was wearing a black and white leather jacket. (*Id*.). Defendants say that video evidence establishes that while inside the gas station, Plaintiff placed his hands in the pockets of the jacket, and Plaintiff disputes this fact but as the Court has already explained, this detail does not affect the analysis and is therefore immaterial. *See* fn. 2.

In any case, after exiting the gas station, Plaintiff returned to Bey's car and sat in the passenger-side back seat of the vehicle. (*Id*. ¶ 8). Two other individuals were in the back seat with Plaintiff, and another individual was in the front passenger seat of the vehicle. (*Id*.). Plaintiff did not know any of them. (*Id*.).

Sgt. Ehlers was driving past the gas station in his squad car and observed two individuals seated in and standing on the vehicle's passenger side drinking from small plastic cups. (*Id.* ¶ 9). Sgt. Ehlers drove next to the vehicle and observed that one of the individuals, Melvin Wiles, was holding a cup containing a brown liquid. (*Id*.).

Before exiting his vehicle, Sgt. Ehlers pressed the record button on his in-car camera system. (*Id.* ¶ 10). During a subsequent conversation with Plaintiff, Sgt. Ehlers noticed that his body microphone was flashing, which indicates that his in-car camera system was not turned on. (*Id.*). Sgt. Ehlers then turned the camera system on. (*Id.*).

When Sgt. Ehlers exited his vehicle, he observed Wiles pour the contents of his cup onto the ground. (*Id.* ¶ 11). He further observed that Graham had a clear plastic cup in his rear pants pocket, and that Plaintiff had a cup of brown alcohol next to his right leg. (*Id.*). As Sgt. Ehlers peered into the back seat of the vehicle where Plaintiff sat, he observed Plaintiff make a "furtive movement" with his right hand towards his waistband. (*Id.* ¶ 12). Sgt. Ehlers also detected the strong odor of raw cannabis from the vehicle and requested that Plaintiff exit Bey's vehicle. (*Id.*)

As Plaintiff did so, Sgt. Ehlers observed a black-and-white jacket lying on the seat that Plaintiff had just vacated. (*Id.* ¶ 13). The jacket was directly behind and underneath the area where Plaintiff's back and buttocks had been.[3] (*Id.*). The jacket was lying in a manner that suggested its wearer had sat down while wearing it, but had slipped his arms out while seated, leaving the jacket behind and beneath him. (*Id.*). The position and state of the jacket suggested that this had been done recently and that the jacket had been minimally disturbed since being removed. (*Id.*).

Based on these observations, Sgt. Ehlers concluded that the jacket belonged to Plaintiff, and that Plaintiff had worn the jacket recently. (*Id.*). He did not question any of the other individuals who had been seated in Bey's vehicle about ownership of the jacket. (Defs.' Resp. Pl.'s SOF ¶ 3).

[3] There is some dispute as to whether the jacket in question was blue and white or black and white because it is described in Ehlers's police report both ways, but there was a jacket that from the video recording submitted in the record appears to be one or the other and was being worn by Plaintiff when he was inside the gas station. (Defs.' SOF, Ex. G-4). Plaintiff admitted to wearing the jacket just prior to his arrest. (Pl.'s Resp. Defs.' SOF ¶ 7.)

Sgt. Ehlers conducted a search for cannabis on Plaintiff's person and in the jacket. (Defs.' SOF ¶¶ 14-15). He found no cannabis, but immediately upon touching the jacket he felt a hard metal object in its right pocket. (*Id*. ¶ 15). He opened the right jacket pocket and discovered a loaded black Taurus G2 9mm firearm. (*Id.*). Sgt. Ehlers then placed Plaintiff in handcuffs, retrieved the jacket, and escorted Plaintiff to the backseat of his squad car. (*Id.*). He removed the loaded 12-round magazine from the firearm, ejected one live round from the chamber, and secured the firearm and ammunition. (*Id*.). Sgt. Ehlers read Plaintiff his *Miranda* rights and asked him about the firearm, but Plaintiff did not respond. (*Id*. ¶ 16). Plaintiff did not have a Firearm Owner's Identification Card or Concealed Carry License at the time, (*id*. ¶ 17), but he did have prior felony convictions for aggravated robbery and for unlawful use of a weapon by a felon, (*id*. ¶ 18).

After other police officers joined Ehlers at the scene, they searched Bey's vehicle and located two open bottles of whiskey—one in the front seat and one in the back seat—and a small plastic cup with a brown liquid in the front cup holder. (*Id*. ¶ 19). The alcohol was emptied onto the parking lot and Sgt. Ehlers issued citations for illegal transportation of alcohol to the vehicle's occupants, including Plaintiff, Amarylis Rivera, Graham, and Wiles, before releasing everyone except Plaintiff from the scene. (*Id*. ¶¶ 19-20).

At this point, Sgt. Ehlers transported Plaintiff to the police station for processing. (*Id*. ¶ 22). Once there, Sgt. Ehlers searched his squad car and located a bag of approximately 4.5 grams of cannabis in clear sight on the floorboard of the vehicle's backseat. (*Id*.). The squad car had been searched for and cleared of contraband prior to the start of his shift. (*Id*.). On a second search of Plaintiff's person and the jacket, Sgt. Ehlers noted that Plaintiff's shirt size was medium, the same as the jacket. (*Id* ¶ 23). When Plaintiff refused to make a statement and requested to speak to an attorney, Sgt. Ehlers ceased his questioning. (*Id*. ¶ 24). Later on October 20, Sgt. Ehlers signed a

criminal complaint against Plaintiff for unlawful use or possession of a weapon by a felon, in violation of 720 ILCS 5/241.1(a). (*Id.* ¶ 25). Before completing his field report, he collected surveillance video from the gas station that showed Plaintiff wearing the jacket. (*Id.*).

Defendant Martinez, Sgt. Ehlers' supervisor, was not present for Plaintiff's arrest, questioning, or processing. (*Id.* ¶ 26). Indeed, Sgt. Martinez's only role was to review, approve and sign Sgt. Ehlers' field report documenting the 2018 arrest. (*Id.*; *see also* Defs.' Resp. Pl.'s SOF ¶ 18).

Plaintiff was detained at the Markham police station through the night of October 20, 2018, pending a bond hearing the next day. (Defs.' SOF ¶ 27). On October 21, 2018, the state court found that there was probable cause for Plaintiff's arrest before releasing Plaintiff on a bond that included no special terms. (*Id.* ¶ 28). A few weeks later, on November 13, 2018, Cook County Assistant State's Attorney Lisa M. Sterba presented the matter to a grand jury, which indicted Plaintiff on sixteen counts under 720 ILCS 5/24, including one count of armed habitual criminal, three counts of unlawful use or possession of a weapon by a felon, and twelve counts of aggravated unlawful use of weapon. (*Id.* ¶ 29). Plaintiff remained free on bond until a subsequent arrest by the Chicago Police Department in July 2020, after an officer observed him carrying a firearm. (*Id.* ¶¶ 29-30).

Eventually, Plaintiff went to trial on the charges related to the 2018 Markham arrest. On September 8, 2021, a jury found Plaintiff not guilty of the charges. (Defs.' SOF ¶ 32). During the trial, the evidence showed that a forensic laboratory conducted latent fingerprint analysis on the firearm from the 2018 Markham arrest and reported that Plaintiff's fingerprints were not found on the firearm. (*See* Defs.' Resp. Pl.'s SOF ¶¶ 11, 12). In addition, Sgt. Ehlers testified that the jacket was black and white, which differed from the information he recorded in the police report, where he described the jacket as "blue and white." (*Id.* ¶ 9).

## LEGAL STANDARD

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704-05 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

The party seeking summary judgment has the initial burden of demonstrating the "absence of evidence to support the non-moving party's case." *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If this burden is met, the opposing party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

## DISCUSSION

Plaintiff's remaining claims against Defendants are for unlawful pretrial detention and malicious prosecution under the Fourth Amendment and malicious prosecution under state law.[4] Defendants contend that summary judgment is warranted because Plaintiff's pretrial detention and

[4] On 8/28/25, the Court dismissed with prejudice all claims against Defendants Ofc. Woods and City of Markham (Dkt. 78) at the request of the parties (Dkts. 75-76). The Court previously dismissed Defendants Markham Police Department and Illinois State Police Department on 10/5/23 during the initial screening of his pro se prisoner complaint. (Dkt. 4).

prosecution were supported by probable cause. The Court agrees.

## I. <u>Defendant Ehlers</u>

### A. <u>Plaintiff's Arrest</u>

Plaintiff's pre-trial detention claim hinges on Sgt. Ehlers' conduct during and after his arrest on October 20, 2018. Defendants argue that Sgt. Ehlers had probable cause to detain Plaintiff and that Plaintiff's ensuing prosecution was not improper.[5] Plaintiff contends that there is a question whether probable cause existed for the arrest due to inconsistencies in Sgt. Ehlers's statements about the jacket holding the gun. (*See* Dkt. 98 at 629-30).

The existence of probable cause defeats claims for false arrest, unlawful pretrial detention, and malicious prosecution. *Coleman v. City of Peoria*, 925 F.3d 336, 350 (7th Cir. 2019) ("Although [false arrest] is a federal constitutional claim and [malicious prosecution] is a state tort, the existence of probable cause defeats both."); *Vaughn v. Chapman*, 662 F. App'x 464, 467 (7th Cir. 2016) ("[T]he existence of probable cause is a complete defense to malicious prosecution[.]"); *Williams v. City of Chicago*, 315 F.Supp.3d 1060, 1070 (N.D. Ill. Jun. 1, 2018) ("seizure of the plaintiff pursuant to legal process unsupported by probable cause" is an element to an unlawful pretrial detention claim). Showing probable cause is not a high bar to clear, *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018), and a plaintiff bears the burden of establishing its absence, *McBride v. Grice*, 576 F.3d 703, 706 (7th Cir. 2009) ("In this circuit the allocation of the burden of persuasion in a § 1983 case claiming a Fourth Amendment violation is clear: a plaintiff claiming

---

[5] Plaintiff's *pro se* complaint specified that he was pursuing claims of illegal detention and a state law claim for malicious prosecution. On initial screening, the Court found that, to the extent Plaintiff was attempting to pursue a Fourth Amendment claim for false arrest, it is untimely. (Order, Dkt. 4, at 14). However, out of an abundance of caution, and because of the content of the record provided by the parties, the Court includes in its discussion the facts central to Plaintiff's 2018 arrest.

that he was arrested without probable cause carries the burden of establishing the absence of probable cause.”).

An officer has probable cause if the totality of the circumstances known to the officer at the time of the arrest would warrant a reasonable person believing the arrestee committed a crime. *Gutierrez v. Kermon*, 722 F.3d 1003, 1008 (7th Cir. 2013). The probable cause inquiry “does not require that the officer’s belief be correct or even more likely true than false, so long as it is reasonable.” *Fleming v. Livingston Cnty*., 674 F.3d 874, 878-879 (7th Cir. 2012). Although mere suspicion is not enough, an officer also need not be virtually certain that a suspect has committed an offense to make an arrest. *United States v. Covarrubias*, 65 F.3d 1362, 1368 (7th Cir. 1995).

Here, Plaintiff was charged with unlawful use or possession of a weapon by a felon. Illinois law forbids any person previously convicted of a felony offense from knowingly possessing any firearm on or about one’s person. 720 ILCS 5/241.1(a). Plaintiff had been convicted of a felony at the time of his arrest. While Sgt. Ehlers did not know this when he arrested Plaintiff, he did before completing his October 20, 2018 field report, and before the ASA made the decision to charge Plaintiff. (*See* Defs.’ SOF, Ex. H-1, at 466).

Nonetheless, “probable cause to arrest *on any basis* precludes a false arrest claim,” *Taylor v. Hughes*, 26 F.4th 419, 432 (7th Cir. 2022) (emphasis added). The critical question then is whether Sgt. Ehlers reasonably believed Plaintiff was unlawfully in possession of the gun at the time of the arrest. The possession element can be satisfied by actual or constructive possession. *United States v. Garrett*, 903 F.2d 1105, 1110 (7th Cir. 1990). A question of fact arguably exists as to whether Plaintiff *actually* possessed the gun. Indeed, Plaintiff insists the jacket in which the gun was found was not his. But the issue of *constructive* possession warrants closer consideration.

Constructive possession can be shown through evidence of the suspect's knowledge of the presence of the weapon and his immediate and exclusive control over the area when it was found. *Taylor*, 26 F.4th at 432; *see also Garrett*, 903 F.2d at 1110 (constructive possession exists when a person knowingly has the power and intention at a given time to exercise dominion and control over an object). A suspect's knowledge of the presence of a weapon may be inferred from "(1) the visibility of the contraband from the [plaintiff's] location within the car; (2) the amount of time that the [plaintiff] had to observe the contraband; (3) any gestures or movements made by the [plaintiff] that would suggest that [he] was attempting to retrieve or conceal the contraband; and (4) the size of the contraband." *People v. Jackson*, 2017 IL App (1st) 150677-U, ¶ 31 (citation omitted) (finding constructive possession where the officer observed the suspect make furtive movements and the gun was recovered from under the seat where he was sitting). But "[p]roximity to the item [or] presence on the property where the item is located, . . . without more, is not enough to support a finding of constructive possession." *United States v. Morris*, 576 F.3d 661, 666 (7th Cir. 2009); *see also United States v. Chairez*, 33 F.3d 823, 825 (7th Cir. 1994) ("The mere fact that both [the defendant] and the gun were in the same car is an insufficient basis for a factfinder to determine that [the defendant] had knowledge of a firearm.").

Defendants rely on *Young v. City of Chicago*, 987 F.3d 641, 642 (7th Cir. 2021), which the Court finds persuasive. In *Young*, the Seventh Circuit concluded that officers had probable cause to believe that plaintiff possessed a firearm where they found a gun next to him in the car he was driving. *Young*, 987 F.3d at 642. The appellate court specifically noted that certain facts did not defeat probable cause. First, although plaintiff told the officers that the gun belonged to another vehicle occupant, the court explained that "[m]any putative defendants protest their innocence, and it is not the responsibility of law enforcement officials to test such claims once probable cause has

been established." *Id*. at 644 (quoting *Spiegel v. Cortese*, 196 F.3d 717, 724 (7th Cir. 1999)). Second, while the officers saw the other occupant handle the gun, they still had probable cause to believe that the plaintiff and the passenger *jointly* possessed the gun because the plaintiff was sitting next to the gun. *Id*. at 645. Third, even though the *Young* plaintiff alleged that the police falsified evidence against him after his arrest—including by destroying his first written statement and making him write a second, more incriminating version that omitted several exonerating facts—the court found that, even if true, the police still had probable cause to detain the plaintiff because they "found [him] with a gun next to him in the car that he was driving" and "[t]hey didn't need anything else." *Id*.

This Court therefore agrees with Defendants that Sgt. Ehlers had probable cause to believe Plaintiff had constructive possession of the firearm recovered from the car during Plaintiff's arrest. Here, Plaintiff was a backseat passenger in the car. After approaching the vehicle, Sgt. Ehlers observed Plaintiff making what he described as a "furtive" movement with his right hand toward his waistband. And after Plaintiff exited the vehicle, Sgt. Ehlers saw a jacket sitting beneath and beside the immediate area where Plaintiff had just been seated in the back seat. The jacket was lying in a manner suggesting that its wearer had sat down while wearing it and slipped his arms out while seated, leaving the jacket behind and under him.[6]

Plaintiff counters by suggesting that, because he says the jacket was not his, there was no constructive possession. (Pl.'s Resp. at 660-61). But "ownership of the property" where the contraband is found is "not essential" to a finding of constructive possession sufficient to support probable cause. *Garrett*, 903 F.2d at 1112 n.8 (collecting cases). And neither does constructive

[6] Plaintiff objected to this statement on the basis of hearsay. (Pl.'s Resp. Defs.' SOF ¶ 13). But this is an improper objection because the statement is based upon Sgt. Ehlers's own observation. Plaintiff's dispute also references Sgt. Ehlers' police report, which does not properly controvert the proposed fact.

possession require the firearm to be in plain sight. *Taylor*, 26 F.4th at 432 (constructive possession can be shown through the suspect's knowledge of the presence of the weapon and immediate and exclusive control over the area it was found); *see also Jackson*, 2017 WL 4274082, at *5-6 (knowledge may be inferred from gestures or movements that would suggest attempts to retrieve or conceal the contraband). These standards bear directly on the facts here: the firearm was not locked in a trunk or inaccessible to Plaintiff. Like in *Young*, the gun was easily within Plaintiff's "dominion and control." *Young*, 987 F.3d at 645 (citing *People v. Hill*, 226 Ill. App. 3d 670 (3d Dist. 1992)).

Based on his observations, Sgt. Ehlers concluded Plaintiff had been wearing the jacket and that the jacket containing the firearm belonged to Plaintiff. Probable cause that Plaintiff had constructive possession of the firearm, coupled with Ehlers' confirmation that Plaintiff did not have a FOID card or CCL would have given any reasonable officer sufficient probable cause to believe that Plaintiff unlawfully possessed the firearm, justifying Plaintiff's arrest.

To the extent Plaintiff argues that Sgt. Ehlers did not have probable cause to arrest Plaintiff because he failed to question the other vehicle occupants about who owned the jacket or the firearm, that argument also fails. Officers need not continue their investigation once they have established probable cause. *See Mustafa v. City of Chicago*, 442 F.3d. 544, 548 (7th Cir. 2006) ("Police officers have no duty to investigate extenuating circumstances or search for exculpatory evidence once probable cause has been established . . . . They may simply arrest the accused suspect."). On the record presented, there was probable cause to arrest Plaintiff based on the totality of the circumstances known to Sgt. Ehlers at the time of the arrest.

**B. <u>Illegal Detention and Malicious Prosecution</u>**

The record also establishes probable cause for Plaintiff's pre-trial detention. The Fourth

Amendment extends to claims of unlawful pretrial detention that both "precede[]" and "follow[] the start of legal process in a criminal case," including "when legal process itself goes wrong." *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 367 (2017). The Seventh Circuit has not provided elements for a Fourth Amendment unlawful pretrial detention claim, but it has emphasized that probable cause defeats such a claim. *See Camm v. Faith*, 937 F.3d 1096, 1105 (7th Cir. 2019).

Probable cause "exists whenever an officer or a court has enough information to warrant a prudent person to believe criminal conduct has occurred." *Whitlock v. Brown*, 596 F.3d 406, 411 (7th Cir. 2010) (citing *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983)). "A judicial determination of probable cause is normally entitled to a presumption of validity," *Lewis* v. *City of Chicago*, 914 F.3d 472, 477 (7th Cir. 2019), and "an indictment is prima facie evidence of probable cause," *Coleman*, 925 F.3d at 351. However, "[t]hese presumptions can be rebutted 'when legal process itself goes wrong" like when "a judge's probable-cause determination is predicated solely on a police officer's false statements.'" *Stephenson v. City of Chicago*, No. 21 C 338, 2024 WL 3251346, at *6 (N.D. Ill. July 1, 2024) (quoting *Washington v. City of Chicago*, 98 F.4th 860, 869 (7th Cir. 2024)). To rebut the presumptions, a plaintiff must show: (1) "that the officer who sought the [determination] knowingly or intentionally or with a reckless disregard for the truth, made false statements to the judicial officer," and (2) "that the false statements were necessary to the judicial officer's determination that probable cause existed for the arrest." *Washington*, 98 F.4th at 870 (internal quotation marks omitted) (quoting *Whitlock*, 596 F.3d at 410).

Here, after Plaintiff was arrested, Sgt. Ehlers transported him to the police station for processing. Once there, Sgt. Ehlers searched his squad car—which had been searched before his shift and did not contain any illegal substances—and discovered a bag of cannabis on the floor in

the rear of the vehicle.[7] Sgt. Ehlers conducted a second search of Plaintiff's person and noted that Plaintiff's shirt was a size medium—the same size as the jacket found under or beside Plaintiff in Bey's vehicle. Before completing his field report and signing the criminal complaint, Sgt. Ehlers also obtained surveillance video from the gas station, in which he observed Plaintiff wearing the jacket moments prior to the arrest. (Defs.' SOF, Ex. G-4). Sgt. Ehlers proceeded to sign a criminal complaint against Plaintiff for unlawful use or possession of a firearm by a felon in violation of 720 ILCS 5/241.1(a).

Plaintiff was detained at the police station overnight on October 20, 2018, before being arraigned and released on bond on October 21, 2018, when the Cook County state court found there was probable cause for Plaintiff's arrest. On November 13, 2018, a grand jury indicted Plaintiff on sixteen counts related to his October 20 arrest, including counts of armed habitual criminal and of unlawful use or possession of a weapon by a felon. Plaintiff remained free on bond until he was arrested again in 2020. Plaintiff is currently imprisoned.

While there is no dispute that Plaintiff was detained, the parties disagree about how long Plaintiff was detained after his October 20, 2018 arrest. Whatever the case, the record is devoid of evidence that the legal process went wrong at any point during his detention. He was timely arraigned, provided due process, and released on bond pending his trial. Accordingly, his claim for unlawful detention fails.

So too does his malicious prosecution claim, which must be reviewed under both Illinois state law and the federal Constitution. *See Evans v. Matson*, No. 23-2954, 2024 WL 2206638, at *2 (7th Cir. May 16, 2024) (unpublished). A malicious prosecution claim under § 1983 arises where

[7] Plaintiff disputes that he "consumed or possessed" any alcohol or cannabis, (Pl.'s Resp. Defs.' SOF ¶ 12), however, the material cited to in support of the dispute does not address possession of cannabis, only alcohol, so the attempt at disputing the material fact fails, and to the extent Plaintiff objects to the statement as hearsay, it is improper.

a criminal prosecution "(1) was instituted without probable cause; (2) for a malicious motive—a purpose other than bringing the defendant to justice; and (3) ended without a conviction," resulting in the plaintiff's seizure pursuant to legal process prior to his or her eventual release. *Id.* (quoting *Thompson v. Clark,* 596 U.S. 36, 44 (2022)) (cleaned up). In a similar vein, a malicious prosecution claim under Illinois law requires "(1) commencement or continuation of an original criminal or civil judicial proceeding by the defendants, (2) the termination of the proceeding in favor of the plaintiff, (3) the absence of probable cause for such proceedings, (4) the presence of malice, and (5) damages resulting to plaintiff." *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 26.

Courts have recognized that "a malicious prosecution claim against a police officer is anomalous because the State's Attorney, not the police, prosecute a criminal action." *Snodderly v. R.U.F.F. Drug Enf't Task Force*, 239 F.3d 892, 901 (7th Cir. 2001) (cleaned up). Such a claim against police officers requires "some improper act *after* they arrested [plaintiff] without probable cause, for example, that they pressured or influenced the prosecutors to indict, made knowing misstatements to the prosecutor, testified untruthfully, or covered up exculpatory evidence." *Id.* (emphasis added); *see also Evans*, 2024 WL 2206638, at *3 (finding no malicious prosecution claim where plaintiff failed to allege the police officer defendants "did anything after the arrest that made them responsible in the prosecution, such as misleading the prosecutors"); *Rowan v. Carroll*, Case No. 23 C 7033, 2024 WL 3398358, at *6 (N.D. Ill. July 11, 2024) ("To hold the arresting officers liable under either federal or state law, the plaintiff must show that the police officers took some additional action after the arrest to cause the criminal proceeding."). Importantly, under Illinois law, the "existence of probable cause in a malicious-prosecution action is 'determined by looking to what the defendants knew at the time of subscribing a criminal

complaint' and not at the (earlier) time of arrest." *Vaughn*, 662 F. App'x at 467 (quoting *Gauger v. Hendle*, 2011 IL App (2d) 100316, ¶ 112).

Plaintiff correctly points out that an officer "knowingly and recklessly providing false information [in a criminal complaint]" precludes summary judgment on a Fourth Amendment claim. (Pl.'s Resp. at 653 (citing *Daughtry v. Page*, 906 F.3d 606, 613 (7th Cir. 2018)). But he then fails to identify any evidence in the record of any improper action by Sgt. Ehlers after the arrest that would support malicious prosecution. Rather, Sgt. Ehlers's continued investigation—including his review of the gas station surveillance video—supported the existence of probable cause continuing up to and including when he subscribed the criminal complaint.

Indeed, Plaintiff points to no record evidence supporting his theory that Sgt. Ehlers relied on or provided any false information, much less that he did so knowingly or recklessly. Plaintiff points only to marginal discrepancies in Sgt. Ehlers' police report and unsupported allegations that the report includes false information and asks the Court to reject the record evidence provided based on Sgt. Ehlers' purported credibility issues based on other civil cases involving his conduct. (*See* Dkt. 99 at 672-73) ("Ehlers's prior litigation History creates a genuine dispute of material fact regarding his credibility, intent and adherence to constitutional standards . . . ."). But this would be improper on summary judgment when the Court does not make credibility determinations. *See Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255).

Summary judgment is appropriate only if, on the evidence properly before the Court, no reasonable jury could return a verdict in favor of the non-movant. *Celotex Corp.*, 477 U.S. at 322. To show that a verdict could be returned in his favor, Plaintiff needed to show it was possible that probable cause was lacking at some point during or after his October 20, 2018, arrest, but he did

not. Because there is no evidence in the record from which a jury could find that Sgt. Ehlers took actions that unlawfully extended Plaintiff's detention or prosecution, Sgt. Ehlers is entitled to summary judgment on these claims too.

## II. Defendant Martinez

Next, Defendants argue that Sgt. Martinez is entitled to summary judgment because he lacked sufficient involvement in the arrest and § 1983 does not allow for supervisory liability.

Indeed, there is no supervisory liability under § 1983. *See Aguilar v. Gaston-Camara*, 861 F.3d 626, 630 (7th Cir. 2017) ("a public employee's liability is premised on her own knowledge and actions, and therefore requires evidence that each defendant, through her own actions, violated the Constitution"); *Kuhn v. Goodlow*, 678 F.3d 552, 555-56 (7th Cir. 2012) ("An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation.") (citation omitted). Thus, to hold a supervisor liable for a subordinate's conduct, the supervisor must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Kemp v. Fulton Cnty.*, 27 F.4th 491, 498 (7th Cir. 2022) (cleaned up).

The record here establishes that Sgt. Martinez's only involvement in the events underlying Plaintiff's claims were his review, approval, and signing of Sgt. Ehlers's police report, documenting Plaintiff's October 20, 2018 arrest. While he had some involvement in the events and decisions leading to Plaintiff's detention and subsequent prosecution, for the reasons discussed above, there was probable cause for plaintiff's arrest, detention, and prosecution. And the existence of probable cause defeats claims for false arrest, unlawful pretrial detention, and malicious prosecution. *Coleman*, 925 F.3d at 350 ("Although [false arrest] is a federal constitutional claim and [malicious prosecution] is a state tort, the existence of probable cause defeats both."); *Vaughn*,

662 F. App'x at 467 (7th Cir. 2016) ("[T]he existence of probable cause is a complete defense to malicious prosecution[.]"). Therefore, Plaintiff's claims against Sgt. Martinez fail, and he too is entitled to summary judgment.

## III. Qualified Immunity

Defendants also argue that they are entitled summary judgment on the basis that they are shielded by qualified immunity. "Qualified immunity protects public servants from liability for reasonable mistakes made while performing their public duties." *Findlay v. Lendermon*, 722 F.3d 895, 899 (7th Cir. 2013) (citing *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000)). "To defeat a defense of qualified immunity, the plaintiff must show two elements: first, that the facts show 'a violation of a constitutional right,' and second, that the 'constitutional right was clearly established at the time of the alleged violation.'" *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019) (quoting *Gill v. City of Milwaukee*, 850 F.3d 335, 340 (7th Cir. 2017)). Next, the plaintiff must "show either a reasonably analogous case that has both articulated the right at issue and applied it to a factual circumstance similar to the one at hand or that the violation was so obvious that a reasonable person necessarily would have recognized it as a violation of the law." *Id.* (internal quotation marks omitted) (quoting *Howell v. Smith*, 853 F.3d 892, 897 (7th Cir. 2017)). "[L]ower courts have discretion to decide which of the two prongs of [the] qualified-immunity analysis to tackle first." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

The qualified immunity analysis in the instant case begins and ends with the first prong. No reasonable jury could find a constitutional violation in light of the probable cause (even arguable probable cause) to arrest, detain, and charge Plaintiff that existed. Accordingly, the Individual Defendants are entitled to qualified immunity.

## IV. Sovereign and Public Official Immunity

Last, having determined that the existence of probable cause defeats Plaintiff's federal claims, to the extent Plaintiff raises state law negligence claims, the Court does not have supplemental jurisdiction over them. Accordingly, the Court declines to address Defendants' related arguments regarding sovereign and public official immunity.

## CONCLUSION

For all the foregoing reasons, Defendants' motion for summary judgment is granted. Final judgment entered in favor of Defendants. If Plaintiff wishes to appeal, he must file a notice of appeal with this court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1)(A). If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this court stating the issues he intends to present on appeal. *See* Fed. R. App. P. 24(a)(1).

**DATED**: September 30, 2026

**ENTERED**:

/s/ LaShonda A. Hunt
LASHONDA A. HUNT
United States District Judge